**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00282-CR**
_____

**MICHAEL WAYNE STOWE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-11-17350-CR**
_____

**MEMORANDUM OPINION**

Appellant Michael Wayne Stowe ("Stowe") appeals his conviction for assault family violence with a previous conviction, a third-degree felony. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A). In his sole issue, Stowe complains the trial court erred by admitting extraneous-offense evidence. We affirm the trial court's judgment.

1

# BACKGROUND

The grand jury indictment alleges that on or about January 19, 2023, Stowe:

> did then and there intentionally, knowingly or recklessly cause bodily injury to [Brandy], a member of the defendant's family or a member of the defendant's household or a person with whom the defendant has or has had a dating relationship . . . by hitting and striking [Brandy] with defendant's arm, elbow, hand and extension thereof.[1]

The indictment further alleges that before the commission of the alleged offense, Stowe was convicted of the offense of assault causing bodily injury to a family member. The indictment includes two enhancement paragraphs which allege that before Stowe committed the alleged offense on or about January 19, 2023, Stowe was finally convicted of felony possession of a controlled substance in 2017, and prior to that Stowe was finally convicted of felony delivery of a controlled substance in 1998, and that both felonies became final before he committed the alleged offense. The State filed a Notice of Intent to Use Prior Conviction for Enhancement Purposes, including Stowe's prior convictions for manufacture or delivery of a controlled substance and violation of bond or a protective order assault/stalking.

The trial court granted Stowe's Motion in Limine regarding extraneous offenses and ordered the State to advise the court before eliciting evidence of

---

[1] We use pseudonyms to refer to the victim and her friends to protect the victim's privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

2

extraneous offenses except for the prior assault offense alleged in the indictment. The State advised the trial court that when Stowe pleaded guilty to the prior assault, he also pleaded guilty to violation of a protective order, and the State intended to offer evidence that Stowe violated a court order not to be around Brandy. The State understood that it could only use the words "parole," "prison," or "conviction" when referring to the prior assault which was a strangulation. Stowe stipulated to the prior assault. When the State argued that there was no legal authority to keep out Stowe's conviction for violation of a protective order, Stowe argued "[i]t's just conformity." The State argued it was not conformity because "[i]t goes to the very nature of the relationship[,]" which also included offering evidence that the prior instances of violence included Stowe's use of alcohol and drugs.

The trial court allowed the State to offer evidence that a court order prohibited any contact with Brandy but not evidence that Stowe had a conviction or was on parole. The trial court explained that article 38.371 allowed the State to show the nature of the relationship, and the State agreed. Stowe argued that such evidence was only admissible to rebut a defensive theory. The trial court added that Brandy had recanted and filed an affidavit of nonprosecution and it believed that evidence of Stowe's and Brandy's prior assaultive relationship would probably be admissible to show why she recanted and filed the affidavit. The trial court noted it would consider the issue again after hearing evidence, and if Brandy appeared and testified, it would

3

allow such evidence to come in. The trial court allowed the State to discuss the abusive nature of the relationship during opening argument but not the specifics. The trial court denied the Motion in Limine concerning the relationship between Stowe and Brandy and overruled Stowe's objection, finding that the evidence was relevant and went to the proof.

During the jury trial, Chris, Brandy's friend and ex-husband, explained that Brandy told him she was married to Stowe. Chris testified that on January 19, 2023, he received a distressed call from Brandy, who asked him to pick her up at a gas station because she "was beat up[.]" Chris knew that Brandy and Stowe had been arguing and involved in an altercation because Brandy told him that Stowe 'was beating her up and that she needed help." Chris called the police at Brandy's request and observed Brandy's face was red, she had fresh marks on her neck, and she could not walk well. Chris testified that Stowe walked into the woods before the police arrived. Chris provided a written statement to the police. Chris believed that both Stowe and Brandy were intoxicated. Brandy told Chris that she was afraid of Stowe all the time, and Chris had observed Stowe and Brandy argue on a prior occasion and remembered they had arguments.

Deputy Trevor Buckley Rivers ("Rivers") with the Montgomery County Sheriff's Office testified that on January 19, 2023, he responded to two calls reporting a man and woman were arguing at a gas station and that the woman had

4

been assaulted. Rivers explained he was unable to locate the suspect, who had left on foot. Rivers photographed the scene and Brandy, who appeared beaten, distressed, belligerent, and intoxicated; was verbally noncompliant; and reported that she feared reprisal and would face consequences from Stowe if she cooperated with the police. Brandy told Rivers that Stowe struck her in the face twice while she was driving, and she pulled into the gas station, where the assault continued. Brandy also reported that she felt pain from being strangled and grabbed by the neck, and that Stowe had strangled her multiple times in the past. Stowe threatened to kill Brandy and her family. Rivers testified that Brandy was extremely fearful and traumatized and had swelling to the left side of her face, bruising on her neck, and cuts on her nose and chin, which were typical signs of domestic violence victims.

Detective Rogelio Vargas with the Montgomery County Sheriff's Office testified that he was assigned to Stowe's family violence case and reviewed the offense report and other evidence but was unable to contact Brandy. Vargas testified that the video from the gas station showed the physical altercation between Brandy and Stowe. When Defense counsel asked Vargas if he attempted to contact Stowe, Vargas stated that he did not and did not remember if he had Stowe's phone number. Defense counsel then showed Vargas the offense report, which included a phone number for Stowe, and Vargas agreed he had access to the report. Defense counsel

asked Vargas if he filed a charge without ever speaking to a living witness, and Vargas answered, "Yes."

After defense counsel passed the witness, the trial court conducted a bench conference, during which the State argued that the portion of the offense report that defense counsel referenced concerned Vargas contacting Stowe's parole officer to get Stowe's contact information. The State argued that by attempting to establish that contact had been an issue, defense counsel opened the door to testimony that Vargas had tried to contact Stowe through his parole officer. When defense counsel explained that she only asked if Vargas called the phone number included in the offense report, the trial court overruled defense counsel's objection to testimony that Vargas contacted Stowe's parole officer to get Stowe's contact information, because defense counsel implied that Vargas did not do anything else to contact Stowe. After Vargas's memory was refreshed with the offense report, Vargas testified that when he contacted Stowe's parole officer to determine Stowe's whereabouts, he learned that Stowe only checked in by phone.

Investigator Francisco Saavedra with the Montgomery County District Attorney's Office testified that he is assigned to the Domestic Violence Division. Saavedra explained that his duties included retrieving phone calls between inmates and other people outside the jail that are managed by the Montgomery County Sheriff's Office. Saavedra retrieved calls Stowe made to Brandy and determined that

6

Stowe attempted to place 1,935 calls to Brandy and completed 631 of those calls. Saavedra listened to some of the calls to monitor whether Brandy was being threatened or coerced. Saavedra listened to calls Stowe made to multiple people to try to get those people to contact Brandy and tell her Stowe needed to talk to her. Stowe told one of the people that the end goal was to have Brandy sign a nonprosecution affidavit and recant. During a call Stowe made to Brandy, Brandy confronted Stowe about trying to claim self-defense and told him he needed to tell the truth. After having trouble, Saavedra located Brandy, who appeared at his office after she had signed an affidavit of nonprosecution and disappeared. Saavedra was aware that Brandy had given conflicting statements, but he never heard Brandy admit she was lying during any of the calls he listened to.

Saavedra testified that a court order was issued February 17, 2023, ordering Stowe to have no contact with Brandy, and that Stowe violated that order by contacting Brandy. Saavedra also testified that Stowe had stipulated that on February 1, 2021, he had pleaded guilty to the misdemeanor offense of assault causing bodily injury to a family member.

After Brandy testified and explained that she and Stowe had been married twice, the trial court conducted a bench conference, during which the State informed the trial court that it intended to question Brandy about the abusive nature of her relationship with Stowe. The State explained that it intended to question Brandy

7

about three specific events, which included a 2021 and 2022 violation of a protective order, and a strangulation charge. Stowe objected to the admission of prior extraneous offenses and noted that he had stipulated to the prior assault conviction alleged in the indictment. The trial court explained that the testimony about an affidavit of nonprosecution and cross-examination about Brandy changing her story had changed things, so the trial court allowed the State to offer testimony about the abusive nature of Brandy's relationship with Stowe and how Brandy felt uncomfortable or fearful.

The State also argued that it should be allowed to offer evidence about the underlying facts of the prior assault conviction alleged in the indictment despite Stowe's stipulation because it goes to the very nature of the relationship and rebuts a defensive theory and fabrication. The State explained that Stowe was arrested for violating a protective order involving Brandy and that in 2021, Stowe was charged with strangulation and another violation of a protective order. The trial court agreed that the theory of fabrication and a theory that Brandy had changed her story had been raised by the evidence. The trial court explained that due to the cross-examination and Brandy filing an affidavit of nonprosecution, it would allow the State to "get into it."

Brandy testified that over time, her relationship with Stowe changed due to Stowe using steroids and becoming verbally and physically aggressive. Brandy

explained that she knew Stowe had past issues with drugs and tried to get him help, but the abuse continued. Brandy did not report the abuse because she did not want Stowe to get into trouble. Brandy testified that Stowe violated a 2020 protective order by frequenting her house all the time. Brandy explained that in 2021, there was an active protective order in place when she and Stowe had an argument and Stowe was charged with strangulation. At that point, Brandy began to distrust the police because Stowe was in jail for a year but continued to locate her that entire time. Brandy felt like she could not get away from Stowe and feared his being released from jail, and she felt pressure to stay with Stowe because of the children.

Concerning the current offense that occurred in January 2023, which took place after Stowe was released for the 2021 incident, Brandy testified that she and Stowe had been drinking with friends when they argued in the car and Stowe wanted to "get high[.]" Brandy explained that after Stowe hit her on the right side of her face with his fist, she pulled into the gas station where Stowe kept hitting her and put his hands around her neck. Stowe told Brandy he wanted to kill her and burn the house down with Brandy's daughter inside. Brandy explained that the reason she was seen following Stowe and pulling on his shirt in the video from the gas station was because she was trying to keep Stowe from walking away from the gas station because she "just knew what would happen once he left." Brandy called her cousin and Chris for help because she believed she was going to die, and she was worried

9

Stowe would hurt her daughter if he left. Brandy did not initially ask Chris to call the police because they had never helped her in the past and it just caused chaos, but after Chris arrived, she asked him to call the police because she had a witness, and it was not just her word against Stowe. Brandy did not want to come to court to testify against Stowe because she was worried about her daughter.

Brandy testified she was intoxicated when the police arrived at the gas station, and she was angry and aggressive because the deputy did not treat her like a victim. Brandy did not believe the police would do anything to help her and did not want to give a written statement because she feared Stowe would use it against her. Brandy received medical assistance at the scene and was given an ice pack for her face and jaw, which still has pain. Brandy explained that she changed her phone number so Stowe could not contact her, but Stowe had different people contact her on different occasions. Brandy eventually talked to Stowe because of her daughter and offered Stowe support, including paying for the jail calls, and Stowe asked her to sign an affidavit of nonprosecution, which she filed. At that time, Brandy believed Stowe wanted help and would change.

Brandy had been in contact with the district attorney's office, and she admitted that she had lied about the details of what happened because she wanted it to go away and be done with it and never have to deal with it again. Brandy testified that her testimony in court was not a lie, and she had changed her phone number and was

10

no longer talking to Stowe because she learned that Stowe had been lying to her to get her to "do whatever he wanted me to so he could get out of jail." Brandy explained that she had intentionally made it hard for people to find her, but Chris convinced her to appear at trial and tell the truth. Brandy testified that when Stowe had someone contact her three days before trial, she changed her phone number and felt like running again.

Brandy recalled talking to Stowe's investigator and agreed that he had not threatened her, but Brandy claimed Stowe had threatened her. Brandy explained that Stowe sent her a letter with a printout of the affidavit and told her she "had to do it or he would find a way to have others do that for him," which meant that Brandy "wouldn't have a relationship with the kids or anything again." Brandy agreed that she sent emails to defense counsel asking when she could meet and what she could do to have the charges dismissed, but she claimed she did so at Stowe's requests, which he made in a letter, over the phone, and in person. Brandy claimed that Stowe's investigator had the same printout Stowe sent her when she met the investigator at his office and that "those words" in the affidavit of nonprosecution saying she wanted the prosecution terminated and that no assault took place were "not mine." Brandy agreed that she swore that "those were my words[,]" and that she gave the affidavit because she was asked to do so.

11

Jade Farias, an EMS Captain with the Montgomery County Hospital District, testified that she was the paramedic who treated Brandy at the gas station. Brandy told Farias she had been in an altercation with her ex-husband while in the car, he struck her seven times in the face with closed fists, and she fell to the ground three to four times and hit her head. Brandy complained of pain to her left jaw and tailbone area and had swelling to her left cheek, a contusion to her chin and left temple, and abrasions on her neck. Brandy also reported being strangled. Brandy refused to be transported to the hospital, and Farias explained that such refusal was common for domestic violence victims. Farias recalled that Brandy reported that it was not the first time this had happened with her ex-husband. Farias noted that Brandy admitted she had used alcohol.

Amayramy Doss, a Victim's Assistance Coordinator with the Montgomery County District Attorney's Office, testified that she was assigned to the Domestic Violence Unit. Doss explained the cycle of violence and abuse seen in a family violence relationship and the power and control a perpetrator may have over the victim. Doss stated that victims may distrust law enforcement if they are unable to receive the assistance they need. Doss explained that victims may struggle with substance abuse and other issues which lead them to recant and have the charges dismissed. Doss testified that a victim's recanting or signing an affidavit of prosecution does not mean the victim was lying about the incident because they may

be doing it at the hands of somebody else. Doss explained that victims fear retaliation if they cooperate with police and testify at trial.

Doss met with Brandy multiple times and explained that Brandy had trust issues and had been inconsistent about whether she wanted the charges to be dropped. Doss believed that Brandy's inconsistency was based on her communications with Stowe, because she was not cooperative and hard to contact when Stowe had contacted her. Doss stated that she was not surprised when Brandy told her she did not want to proceed with the charges and that she had lied, because Brandy did not want to cooperate in a prior assault case. Doss could clearly see that Brandy was fearful when she testified at trial and did not want to recount the events.

The defense called one of Brandy's former friends, who testified that Brandy did not have a "very highly[]" reputation among her friends for being truthful. The defense also called its retained private investigator, Roy Underwood, who testified that he recorded his interview with Brandy and assisted Brandy in completing and signing her affidavit of nonprosecution. Underwood explained that during the interview, Brandy was sincere about wanting to change her prior statement because it was inaccurate, and Underwood was not concerned that Brandy had been coerced or threatened to do so. Underwood agreed that the conditions of Stowe's bond, which were court ordered by the judge, included having no direct or indirect contact or communication with Brandy while out on bond. Underwood was not aware of

Stowe's attempts to contact Brandy while he was in jail, and he stated that Brandy signed the affidavit of nonprosecution ten days after Stowe contacted Brandy from jail.

The jury found Stowe guilty of the offense of assault causing bodily injury to a family member with a previous conviction as alleged in the indictment. During punishment, the jury found that the two enhancement paragraphs were "true[,]" and assessed Stowe's punishment as a habitual offender at life in prison.

## ANALYSIS

In his sole issue, Stowe complains the trial court erred by admitting evidence through Brandy regarding his abusive relationship history with Brandy, which included three extraneous offenses between Stowe and Brandy, because the evidence was offered to establish character conformity in violation of Rule 404(b). *See* Tex. Code Crim. Proc. Ann. art. 38.371(b); Tex. R. Evid. 404(b). Specifically, Stowe complains about the admission of testimony about a strangulation charge and violations of a protective order in 2020 and 2021. Stowe also complains the trial court erred by admitting extraneous-offense testimony from Detective Vargas regarding his parole status. Stowe argues that Vargas's testimony was not related to a material issue and should not have been admitted because it informed the jury of an extraneous offense that resulted in a prison sentence and being on parole. Stowe argues that even if the extraneous-offense evidence was admissible under article

14

38.371 or Rule 404(b), the trial court should not have admitted the evidence because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403.

Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Tex. R. Evid. 401. Rule 404(b) of the Texas Rules of Evidence limits character evidence, but it is nevertheless a rule of inclusion. Tex. R. Evid. 404(b); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Rule 404(b) precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a particular occasion, but the rule allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). Those listed purposes "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343.

Article 38.371, which applies to family-violence prosecutions, provides another non-character-conformity purpose for admitting extraneous-offense evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.371. Although the statute explicitly prohibits the admission of character evidence that is otherwise prohibited by the Rules of Evidence or other laws, it expressly allows "evidence of all relevant facts

and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . ., including testimony or evidence regarding the nature of the relationship" between the accused and the complainant. *Id.* art. 38.371(b), (c). Thus, Article 38.371(b) expressly allows extraneous-offense evidence regarding the nature of the relationship between an accused and a complainant. *Mourning v. State*, No. 02-19-00168-CR, 2020 WL 6165309, at **4-5 (Tex. App.—Fort Worth Oct. 22, 2020, no pet.) (mem. op., not designated for publication); *Franco v. State*, No. 08-18-00040-CR, 2020 WL 3168560, at *8 (Tex. App.—El Paso June 15, 2020, no pet.) (not designated for publication) ("[T]he Legislature has determined under article 38.371 that the nature of the relationship itself is a permissible, non-character-conformity purpose for which evidence is admissible.") (citing Tex. Code Crim. Proc. Ann. art. 38.371(b); Tex. R. Evid. 404(b)(2); *Fernandez v. State*, 597 S.W.3d 546, 564-66 (Tex. App.—El Paso 2020, pet. ref'd)).

The extraneous-offense evidence concerning the nature of his relationship that was admitted during Brandy's testimony was admissible under article 38.371(b) and Rule 404(b) on that basis. The evidence, which reflected the volatile relationship and prior domestic-violence incidents, gave the jury important insight into the abusive nature of the relationship and revealed why Brandy was afraid to cooperate with the State and testify at trial. *See Baxter v. State*, No. 02-22-00258-CR, 2023 WL 8268292, at *9 (Tex. App.—Fort Worth Nov. 30, 2023, pet. ref'd) (mem. op., not

16

designated for publication). Thus, we hold the evidence was admissible for the same reason the trial court ruled it admissible—it concerned the abusive nature of Stowe's and Brandy's relationship, a purpose that is not character conformity. *See* Tex. Code Crim. Proc. Ann. art. 38.371(b); Tex. R. Evid. 404(b); *Fernandez*, 597 S.W.3d at 564-66; *Mourning*, 2020 WL 6165309, at *4-5; *Franco*, 2020 WL 3168560, at *8. The evidence also helped rebut Stowe's defensive theory of fabrication and questioning Brandy's credibility and veracity. *See Fillmore v. State*, No. 03-22-00504-CR, 2024 WL 3586040, at *2 (Tex. App.—Austin July 31, 2024, no pet.) (mem. op., not designated for publication).

Stowe also complains the trial court erred by admitting extraneous-offense testimony from Vargas regarding his parole status because the testimony was not related to a material issue and informed the jury of an extraneous offense that resulted in a prison sentence and being on parole. Stowe argues that while defense counsel's cross-examination sought to show Vargas did not investigate the offense, the State could have rebutted defense counsel's claim without identifying that Vargas contacted Stowe's parole officer. The State contends that Vargas's testimony rebutted Stowe's defensive theory that Vargas's investigation was inadequate, which is one of the permissible purposes for the admission of relevant evidence under Rule 404(b).

17

"Rebuttal of a defensive theory such as mistake . . . is also one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *see* Tex. R. Evid. 404(b); *Burrell v. State*, No. 02-18-00242-CR, 2019 WL 4048862, at **4-5 (Tex. App.—Fort Worth Aug. 28, 2019, no pet.) (mem. op., not designated for publication) (citation omitted). Additionally, evidence offered by a party may be admitted when the other party "opens the door" to the otherwise inadmissible evidence. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). A party's attempt to leave the jury with a false impression effectively invites the response. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009).

Here, the State argued that defense counsel opened the door to testimony that Vargas tried to contact Stowe through his parole officer when defense counsel attempted to establish that contact had been an issue. The trial court overruled defense counsel's objection to testimony that Vargas contacted Stowe's parole officer to get Stowe's contact information, because defense counsel implied that Vargas did not do anything else to contact Stowe. Based on this record, we conclude the trial court could have reasonably determined that Vargas's testimony about contacting Stowe's parole officer was offered for a non-conformity purpose under Rule 404(b) to rebut the defensive theory that Vargas's investigation was inadequate because he did not speak with Stowe.

18

Stowe also argues that even if the extraneous-offense evidence is admissible under article 38.371 or Rule 404(b), Rule 403 precludes its admission. *See* Tex. R. Evid. 403, 404(b); Tex. Code Crim. Proc. Ann. art 38.371(b). Evidence admissible under Rule 404(b) may nevertheless be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *see Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 388-89 (Tex. Crim. App. 1991) (op. on reh'g); *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (citation omitted); *Emich*, 2019 WL 311153, at *7. It is the burden of the party opposing the admission of the evidence to overcome this presumption by showing that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or by the other dangers listed in Rule 403. *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

While Stowe complains the trial court erred by admitting the complained-of evidence because the probative value of the extraneous-offense evidence was

19

substantially outweighed by the danger of unfair prejudice and its admission affected his substantial rights, the record does not reflect that Stowe made a Rule 403 objection at trial when the challenged extraneous-offense evidence was offered during Brandy's and Vargas's testimony. Accordingly, we hold that Stowe failed to preserve this complaint for our review on appeal. *See Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Smith v. State*, No. 09-17-00302-CR, 2019 WL 1270817, at *6 (Tex. App.—Beaumont Mar. 20, 2019, no pet.) (mem. op., not designated for publication); *see also* Tex. R. Evid. 403; Tex. R. App. P. 33.1(a)(1)(A).

Having considered and overruled each of Stowe's arguments, we overrule his sole issue and affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice


Submitted on February 27, 2026
Opinion Delivered July 1, 2026
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

20